Merrick, J.
Beverly Hallisey (“Hallisey”), trustee of WPH Nominee Trust (‘Trust”), brought this negligence action to recover for property damage allegedly caused by the defendants, Richard Ricardo (“Ricardo”) and John Fontes (“Fontes”). After a jury verdict in favor of Hallisey against Ricardo, Ricardo moved, unsuccessfully, for judgment notwithstanding the verdict. Ricardo has appealed the denial of that motion as well as the court’s admission into evidence of certain opinion testimony on damages. We conclude that the evidence was sufficient to support the jury’s determination of liability, but that a new trial on the question of damages is in order.
As the denial of Ricardo’s motion for judgment n.o.v. is at issue, the evidence must be viewed in the light most favorable to Hallisey. Providence & Worcester R.R. v. Chevron U.S.A. Inc., 416 Mass. 319, 321 (1993). So viewed, the record indicates that the Trust owned property at 17 Forest Avenue Court in Plymouth that consisted of a three-family dwelling and a detached garage, with approximately 600 square feet in the garage’s main work area. In 1998, the Trust rented the garage to Ricardo, who used it to store and repair cars. Ricardo was in complete control of the garage, which housed his tools and equipment, including several fire extinguishers. The garage was cluttered with auto parts and a number of propane and acetylene tanks, some partially filled. Ricardo hired Fontes to go to the garage on April 23,2003 to remove an engine from a Ford Thunderbird. Fontes was to be paid $100.00 to remove the automobile engine with Ricardo’s tools, but Ricardo did not otherwise instruct Fontes on the performance of the work.
As Fontes was using an acetylene torch to cut the engine’s gas line, a small fire started. The flame was initially about the size of a softball. Fontes grabbed a fire extinguisher 10 to 15 feet away and tried to use it to suppress the fire. But when he operated the extinguisher, no foam came out of it. Fontes then reached for another extinguisher about 8 feet away. The second extinguisher also failed to operate. As the fire developed smoke from burning rubber and plastic, Fontes fled from the building, which was ultimately seriously damaged by the fire.
Ricardo later asked Fontes to testify that, at the time of the fire, he had been *122 removing the engine for his own use. Ricardo testified that inspections of the fire extinguishers were up to date, but he produced no records of inspections. The Trust’s only evidence of damages was the opinion testimony of plaintiff-trustee Hallisey’s husband, William Hallisey (‘William”), who managed the property and was also its beneficial owner.
After trial, the jury returned a verdict that Fontes was not negligent, but found Ricardo negligent and the Trust contributorily negligent. The jury assessed the percentages of responsibility of Ricardo and the Trust to be seventy (70%) percent and thirty (30%) percent, respectively, and awarded total damages in the amount of $25,000.00. The trial judge thereupon ordered judgment for the Trust against Ricardo in the amount of $17,500.00.
In his motion for judgment n.o.v. and on this appeal, Ricardo argued that the evidence was insufficient to permit a finding of his negligence, and that the verdicts against him and in favor of Fontes were inconsistent. Ricardo has also appealed the admission, over his objection, of the testimony of the plaintiff-trustee’s husband, William, as to damages.
1. In support of his argument that the evidence was insufficient to permit the verdict against him, Ricardo contends that he could not be held vicariously liable for Fontes’s negligence because Fontes was an independent contractor. The jury determined, however, that Fontes was not negligent. By definition, therefore, Ricardo’s negligence could not have been vicarious.
The dispositive question is whether, “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of [both] the plaintiff’ and the codefen-dant, Fontes.[2] Masingill v. EMC Corp., 449 Mass. 532, 543 (2007), quoting Kelly v. Railway Express Agency, Inc., 315 Mass. 301, 302 (1943). The jury may not have been persuaded that the original small “softball” sized fire was the result of Fontes’s negligence. The fact that the jury found the Trust to be contributorily negligent[3] suggests that the jury based its verdict on the hazardous and cluttered condition of the premises and, more particularly, on the absence of available operable fire extinguishers.[4]
2. As noted, the Trust’s evidence on damages consisted solely of the opinion testimony of the plaintiff-trustee’s husband, William, who managed the property and was also its beneficial owner. Ricardo’s initial argument is that William was not qualified to give his opinion as to the fire damage. Prior to his retirement about five years before the trial, William owned, operated, and did estimates for Shiretown Glass, a *123 company that “did all sorts of home improvements like roofing, windows, decks and porches and vinyl siding and all sorts of glass work and glass enclosures, commercial glass enclosures, all that kind of stuff.” In addition, William and his wife have acquired and “fixed up” a number of other properties, commercial and residential, that they now own in trust At the time of his testimony in this case, William was acting as his own general contractor for the construction of a 5,000 square foot house for himself. In addition to inspecting the fire damage, William also supervised the repair of some of the damage.
“A trial judge enjoys wide discretion in ruling on the qualifications of an offered expert. That discretion is seldom disturbed.” Lavin v. Lavin, 24 Mass. App. Ct. 929, 931 (1987). It was not necessary that William’s general construction experience be specialized in fire damage repair for the judge to exercise properly his discretion to admit William’s testimony. See Letch v. Daniels, 401 Mass. 65, 68 (1987).
3. As to the substance of his opinion, William testified that he had removed debris and “dutched up” some rafters to make the building structurally sound, replaced some roof decking, and installed both a new roof and a new electrical system. In the portions of his deposition read into evidence,[5] William stated that he did not know the cost of the work he had performed; that it was done, in part, by employees of his business and, in part, by transient laborers, who were paid in cash; and that he had no record of how much time any workers had spent on this job. When asked at trial about the cost of those repairs, William repeatedly attempted to reply with an opinion. But the court stated, “No, not the estimate. I don’t want an estimation.” Asked, again, about the cost of the completed work, William testified, over objection, “I would say around $11,000.00.”
Ricardo argues that William should not have been permitted to testify as to estimates of the costs of the completed repairs when records of the actual costs for that work should have been available. “Any inconsistencies, omissions or flaws [in opinion evidence] may be explored through cross-examination to affect the weight of such evidence, but such inconsistencies, omissions or flaws do not affect the admissibility of such evidence.” Brossi v. Fisher, 1999 Mass. App. Div. 99, 104, quoting Sacco v. Roupenian, 409 Mass. 25, 30 (1990). Moreover, a nonexpert contractor may testily as to the value of his own services. Berish v. Bornstein, 437 Mass. 252, 273 (2002).
4. By way of his opinion about the scope of the work remaining to be done, William said:
Well, if I decided to leave all the charred rafters, which I don’t think would be a good idea, I’d probably have to dutch up on the rafters or it would be a shame to remove the roof because the roof is new.
Everything would then have to be sealed so that you can’t smell it and then it would have to be insulated and sheetrocked and skim coated and then the floor would have to be painted.
When asked his estimate of the cost of that work, William testified, again over objec *124 tion, “I’d say probably around $9,000.00 or $10,000.00.” William offered no testimony as to the amount, or cost, of the labor or materials in his estimate, or the manner in which the estimate was calculated. If William had testified to a figure five, or even ten, times the one he gave, the rest of his testimony would not have required any alteration. We recognize that a trial judge has broad discretion “to determine whether an expert witness has a proper basis, in terms of adequate information and preparation, to render an opinion on the matter in dispute.” Louise Caroline Nursing Home, Inc. v. Dix Constr. Corp., 362 Mass. 306, 309 (1972). But “[a] mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend toward that conclusion any more than toward a contrary one has no evidential value.” Toubiana v. Priestly, 402 Mass. 84, 91 (1988), quoting Kennedy v. U-Haul Co., 360 Mass. 71, 73-74 (1971). The function of expert testimony is not to serve as a substitute for the fact finders’ judgment, but to educate the fact finders so that they can make their own. “An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.” Mid-State Fertilizer Co. v. Exchange Nat’l Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989). As the disputed testimony was the only evidence on damages, a new trial on the issue of damages must be ordered.
5. The new trial we order is restricted to the issue of damages only. The verdict as to liability, including comparative negligence, 'will stand. But the jury awarded the Trust more in damages than the total of William’s opinions. This is not a case of an inadequate award of damages reflecting a possible compromise on liability. Menard v. McCarthy, 410 Mass. 125, 130 (1991). “[T]he reason for setting aside the verdict relates solely to damages, disassociated from every other contributing, related or vitiating cause....” Service Publ., Inc. v. Goverman, 396 Mass. 567, 576 (1986), quoting Waucantuck Mills v. Magee Carpet Co., 225 Mass. 31, 33 (1916). Even though liability is established, and in the absence of a default, the parties are still entitled to a jury trial on damages unless they waive it. Singer v. DeMartino, 1999 Mass. App. Div. 7, 11, citing J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §56.9, at 362363 (1977).
Accordingly, the jury’s verdict on the issue of Ricardo’s liability in negligence is upheld. The jury’s assessment of damages is vacated, and this case is returned to the Plymouth District Court for a new trial on the issue of damages only.
So ordered.

 In any event, it would not seem that, in the absence of a cross claim, Ricardo has any standing to appeal the judgment in favor of his codefendant, Fontes. Monize v. Frisoli, 6 Mass. App. Ct. 50, 51 (1978).

 The Trust has not appealed that verdict.

 Ricardo testified that the extinguishers had been inspected, and that a Fire Department Lieutenant told him after the fire that the extinguishers were functioning. There was no objection to the hearsay evidence. In any event, in the absence of any substantiating evidence of inspection, and given his request to Fontes to testify falsely, the jury was not obligated to believe Ricardo.

 Given his roles as settlor of the Trust, spouse of the Trustee that he appointed, beneficial owner, and property manager, it was proper to treat William’s deposition as one of a party under Mass. R. Civ. P., Rule 32 (a) (2).